### HUGH COOPER v. THE STATE.

Where the jury are as competent as any other persons to deduce the proper
conclusions from a given state of facts, the opinions even of scientific wit-
nesses are not admissible in evidence as to the conclusion or inference to be
drawn from them.

There are exceptions to the general rule, that witnesses must speak alone as to
facts. See the opinion in this case for what is said on this point.

Where it appears, that illegal testimony may have controlled the verdict of the
jury, and indeed, has been rendered prominent by the assumption in the
charge of the court, that the evidence was proper, and ought to be weighed
by them, it is impossible to say that the verdict was not influenced by such
improper testimony, and the judgment will be reversed.

APPEAL from Navarro. Tried below before the Hon. Reuben
A. Reeves.

This was an indictment for the murder of Benjamin J. Fortson,
alleged to have been committed on the 17th day of September,
1855, by shooting with a double barrelled shot gun, loaded with
leaden bullets. This case was previously before the court, (see
19 Texas Rep. 449,) and the judgment was then reversed and
the cause remanded.

Fortson and the defendant, on the night on which the former
was killed, went together fire hunting, for deer. The defendant
gave the first information of Fortson's death, by awakening Dr.
Phillips and Mr. Hervey, and informing them of the fact. The
statement then made by the defendant, and also those made
on the succeeding morning, as detailed by the witnesses, in ex-
planation of the manner and cause of the death of the deceased,
were, that they had hunted over the ground intended; that the
deceased had killed one deer, and crippled another; that after
making some search for the latter in vain, they started home.
That they were mounted on horseback, the defendant carrying on
his horse the deer which had been killed; that when they reached
a slough, the defendant was about twenty yards ahead of the
deceased, when he heard a gun fire, and Fortson exclaimed,

"Cooper, I am shot!" That Fortson fell, and the lamp he was carrying, was extinguished by the fall. That the defendant cut the deer loose, went back to Fortson, lighted the lamp, set it down by his head; he breathed about three times and died.

The witness, Slater, to whom the defendant made the foregoing statement, said, that when he and others reached the body, they found it at the spot designated by the defendant, lying in the road, as stated by him; they found the deer lying as had been described, and the lamp still burning.

The defendant in his statement said, that he did not see the man who shot the deceased, nor hear him retreat.

Cooper and Fortson were friendly, and frequently went fire hunting together, and the defendant had been residing at the house of the deceased, for about one year preceding the defendant's death. The road where Fortson was shot, was plain and about ten feet wide, the ground was level, dry and hard, and on either side of the road there was a thicket, but denser on the one side than the other. There was a slight elevation of about five or six inches on one side of the road, and about fifteen feet from where Fortson's horse's tracks indicated that he had sprung, (about ten feet from where the deceased fell.)

The wound inflicted was in the back, to the right of the spinal column, the coat of the deceased was burned or crisped, where the load entered the body. Several witnesses stated, that the gun which was discharged at the deceased must have been very near him,—from two to twelve feet. No tracks or foot-prints were found near the roadside; but from the hardness of the ground, and the grass growing in the woods, tracks would not have left an impression. Some of the witnesses thought a man might, with difficulty, ride through the thicket; one of the witnesses thought otherwise. From the examination made of the ground, in the morning, it appeared, that Fortson's horse sprang straight forward, about ten feet from where the deceased lay; there appeared no other signs of any other horse having sprung forward. It was proved, that in fire hunting, where the lamp is used, the

person carrying it sits erect. The wound penetrated the body horizontally.

The District Judge charged the jury, that, "where there is evidence of the manner and conduct of the party accused, or where he makes statements to others, recently after the offence, the jury may consider these circumstances, and the reasonableness and consistency of the statements, if any, in connexion with the other facts in evidence, in arriving at a conclusion in the case. All these circumstances and statements, are to be taken and considered together, by the jury. On questions of skill, as also the position of different persons, their ability to accomplish a given object, and the mode and manner in which it was done, where the evidence makes it necessary for the jury to determine such questions; the opinion of professional men, in cases in which they are skilled; and the opinion of witnesses who may appear to be competent, on the other questions, from their acquaintance or knowledge of the facts; may be taken by the jury, in connexion with the facts referred to; and from these the jury will arrive at a conclusion in the case, giving such weight to the evidence as the intelligence of the witnesses and other means of information may seem to require, and as may appear to be most in harmony with any known or established facts in such cases."

The defendant was found guilty of murder in the first degree. The other facts appear from the opinion, so far as they need be stated.

*S. C. Simmons & C. M. Winkler*, for the appellant.

*H. W. Sublett*, also for the appellant.

*Attorney-General*, for the appellee.—One of the grounds upon which the appellant relies, for a reversal of this cause, is the only question presented in the bill of exceptions, to wit, that the District Court permitted some of the witnesses to testify to their opinion, that the wound which resulted in the death

of Fortson must have been inflicted by some person on horseback, or at some other elevation.

Although, as a rule, "a witness cannot be asked what his opinion upon a particular question is, yet, when matters of skill and *judgment* are involved, a person competent to give an opinion, may be asked what that opinion is." (Roscoe, Cr. Ev. 179; 2 Russell on Crimes, 924.) Whether, under the circumstances of this particular case, it was allowable for a witness to give his opinion or judgment, is somewhat doubtful; but, it is believed, that the weight of authority will sustain the proposition, that where a witness has testified to the *facts*, he may give his opinion, based upon those facts. Morse v. The State, 6 Conn. R. 9, is a case in point.

The opinions expressed by the witnesses in this case, were based upon known physical laws of universal application, and the facts to which they themselves had deposed, and about all of which the jury were just as capable of forming an opinion, as the witnesses themselves. It is not at all probable, therefore, that the jury were influenced in the slightest degree by the opinions of the witnesses; for, if these opinions were in conflict with those which they themselves had formed, they had a right to, and doubtless did, reject them. But admitting, for the sake of the argument, the testimony to have been inadmissible, and calculated, standing alone, to produce an effect prejudicial to the cause of the accused; yet we find the testimony controlled, and any improper effect which it might have had, entirely obviated by the charge of the presiding judge, who, in effect, instructed them to attach no importance to the opinions of the witnesses, further than those opinions were in harmony with, and supported by, the facts proved.

But even if there should have been improper testimony admitted, this court will look to all the facts of the case; and if there was sufficient *legal* evidence to support the verdict, and justice has been done, the cause will not be reversed. (Stiles v. Tilford, 10 Wend. R. 338; Prince v. Shepard, 9 Pick. 177; Landon v. Humphrey, 9 Conn. R. 209.)

BELL, J.—One of the grounds of the motion for a new trial was, that the court erred in admitting evidence of persons not skilled in medical science, as to the probable range of a shot after entering the body, and the opinion of such witnesses, as to the relative positions of the deceased, and the person who shot him. One of the errors assigned is, that the court below erred in permitting any witness to give, in evidence, his opinion as to whether or not the person who shot the deceased, Fortson, was on horse-back, or some other elevation. The record also contains a bill of exceptions, which shows that the defendant's counsel objected to the admissibility of the opinions of witnesses, as to the relative positions of the deceased and the party who shot him, when such testimony was offered during the trial, and that the objections were overruled by the court. The question, whether or not the court below erred in permitting the testimony referred to, to go to the jury, is thus very fully and properly presented to the consideration of this court.

Let us see what that testimony was. One of the witnesses, Slater, who is not a professional man, so far as is disclosed by the record, stated to the jury as follows: "I think the man who shot, must have been on a level with Fortson, and I do not believe that a man on the ground could have shot Fortson as he was shot." Dr. Oakes, a physician, who assisted in the examination of the body of the deceased, said to the jury: "I think the man who shot must have been on horse-back, or some other elevation." Dr. Phillips, another physician, who also assisted in the examination of the body of the deceased, stated to the jury: "I do not think the person who shot Fortson, could have done so from the ground, but must have been on some elevation." Dr. Cage, another physician, who participated in the examination of the body of the deceased, said to the jury: "I think the person who inflicted the wound must have been on horse-back, or some elevation; and don't believe that such a wound could have been inflicted by a person standing on the ground."

It is to be remarked, that the attention of the court and the jury was called to this testimony, in a particular manner, by the

objections made to its admissibility, by the defendant's counsel. And importance was attached to this testimony, by a charge of the court, having express reference to it.

We are of opinion, that the court below erred in permitting the witnesses to state their opinions or belief, to the jury. And we cannot perceive that the matter about which the opinions of the witnesses were given, was a matter of science or of skill, which made it proper to receive the opinions of medical men in reference to it, any more than the opinion of the witness Slater, who is not shown to be a professional man.

It is a familiar general rule of evidence, that witnesses must speak as to facts, and cannot be permitted to give their belief or opinions, It must be left to juries to draw inferences from the facts. But to the general rule here stated, there are exceptions. In certain cases, certain persons may give their opinions to the jury. I cannot better state the principle on which the exceptions to the general rule repose, than. by quoting the language of the judge who delivered the opinion of the court in the case of the Jefferson Insurance Company v. Cotheal, reported in 7 Wend. 73. In that case, Judge SUTHERLAND said:— "On questions of science, or skill, or trade, persons of skill in those particular departments, are allowed to give their opinions in evidence; but the rule is confined to cases in which, from the very nature of the subject, facts disconnected from such opinions, cannot be so presented to a jury, as to enable them to pass upon the question with the requisite knowledge and judgment. Thus, a physician, in many cases, cannot so explain to a jury the cause of the death, or other serious injury of an individual, as to make the jury distinctly perceive the connexion between the cause and the effect. He may, therefore, express an opinion that the wound given, or the poison administered, produced the death of the deceased; but, in such case, the physician must state the facts on which his opinion is founded."

Mr. Starkie says: "The general distinction is, that the jury must judge of the facts for themselves, but that wherever the question depends on the exercise of peculiar skill and knowledge

that may be made available, it is not a decision by the witness on a fact, to the exclusion of the jury, but the establishment of a new fact, relation or connexion, which would otherwise remain unproved."

Mr. Greenleaf says, that "where scientific men are called as witnesses, they cannot give their opinions as to the general merits of the cause, but only their opinions upon the facts proved."

An examination of the cases in which the opinions of witnesses have been admitted in evidence, will show, that in every well considered case, and in the decisions of all courts of high authority, the principles asserted in the foregoing quotations have been adhered to with much fidelity. Where the question is purely one of skill, or of science, the skilful or scientific witness gives his opinion; not a mere speculative opinion, but an opinion which, in some cases, may amount to absolute, or certain, knowledge: in other cases, is knowledge not amounting to absolute certainty; but supported by facts,—by observation,—by knowledge of the properties of things; of the effects of one thing upon another; of the relations of things; by the known and established laws of physics, or the like. There are also cases, where the question is not one of science, or skill, in which witnesses are permitted to express their opinions. And in these cases, the witnesses need not be men of skill, or science. In these cases, too, the opinion given is not a speculative opinion, but is knowledge, which may amount to certainty, or may not. Illustrations of this latter class of cases, are furnished whenever witnesses are called to establish the identity of an individual; to prove the handwriting of any one; or to testify concerning the sanity or insanity of an individual, with whom the witness is intimately acquainted. There are many things which the mind may clearly apprehend, and yet the mental process cannot be explained, so as to be understood by others. A witness may state, with much certainty, that one, with whom he has associated daily for years, has become insane; and yet he cannot clearly explain to others, how it is, that he knows the individual in question to be insane. A witness may be well acquainted with the

handwriting of another, having seen him write a thousand times. He knows the writing, with nearly as much certainty as he knows the face of the writer; but he cannot communicate to others, how it is, that he knows that handwriting, and can distinguish it from all other writing. So, upon a question of identity. I may feel a strong conviction, not, however, amounting to certainty, that a man who stands before me in the court-room to-day, is the same man whom I knew ten years ago, in a distant part of the world; I cannot explain to others the grounds of my strong belief; yet this belief amounts to a species of knowledge. If called as a witness, I may express my opinion, that the man before me is the same man whom I knew in another place. My opinion is entitled to some weight, because it is the statement of a fact, about which, to be sure, I cannot speak with absolute certainty, but yet with so much certainty, as, perhaps, to satisfy the minds of others, that the thing stated is a fact.

In all these cases, the opinion of the witness is received, because the facts which constitute the cause, from which the opinion proceeds, as an effect, cannot themselves be presented or communicated to the mind of a jury, so as to impart to them the knowledge which the witness actually possesses.

Another illustration of the principle upon which witnesses are sometimes allowed to give opinions upon subjects not involving science, or skill, will be found in the case of McKee v. Nelson, 4 Cowen, 355. That was an action for a breach of promise of marriage. With a view to the damages, it was proposed to prove, by witnesses, whether or not, the plaintiff was tenderly attached to the defendant. The witnesses gave their opinions, founded upon an attentive observance of the parties during the courtship, that the plaintiff was sincerely attached to the defendant. The judge permitted the opinions of the witnesses to go to the jury as evidence. Upon this point, the Supreme Court said: " It is true, as a general rule, that witnesses are not allowed to give their opinions to a jury; but there are exceptions, and we think this is one of them. There are a thousand nameless things, indicating the existence and degree of the tender passion, which

language cannot specify. The opinion of witnesses on this subject must be derived from a series of instances, passing under their observation, which yet they never could detail to a jury." Here is a statement of the true reason, why the opinions of witnesses may be given to a jury, upon questions not involving skill and science. It is, because witnesses have a knowledge of the thing about which they speak, and have acquired that knowledge in a manner which cannot be communicated, or from facts incapable, in their very nature, of being explained to others, that they may state what they know, in the best way they can. This best way is, by giving, in the form of an opinion, that which cannot be put in the form of explanation, or narration.

In the ably considered case of Norman v. Wells, reported in 17 Wendell, 137, the opinions of witnesses had been received in the court below, on a question of damages. On this subject, Judge COWAN said, "The ordinary, and, in general, the only legal course is, to lay such facts before the jury, as have a bearing on the question of damages, and leave them to fix the amount. They are the only proper judges. They are impartial, and capable of entering into these ordinary matters. Witnesses are, in such cases, unavoidably governed by their feelings, and their prejudices, gathered from many sources. This was not a matter of science. That, I admit, forms an exception to the general rule, that facts, not opinions, must be received; the facts relevant to the question before the jury. What is opinion upon a matter of science? Even that, does not rest in the abstract. It is founded on a knowledge of facts; of causes and their effects, uniform in their connexion." The learned judge then alluded to the cases in which witnesses had been permitted to give their opinions as to the state of the affections of individuals in actions of criminal conversation, and breaches of marriage promise. The judge said, "All such cases are exceptions; and they ought not to be rashly multiplied, even under the limitation imposed, for it is impossible to say, that the witness is speaking altogether from facts which he personally knew." It is undoubtedly the rule, that the opinions of medical men are admissible upon ques-

tions of medical science, as, for instance, the cause of death, or of disease; the ordinary effect of medicines; the sane or insane state of a person's mind, as collected from a number of circumstances; and this, even though the opinions expressed are not founded on personal observation, but on the case itself, as proved by other witnesses on the trial. But even a medical man, or a man learned in any department of science, cannot be permitted to give a mere opinion, not based on facts; in other words, the facts on which the opinion is based must either be stated by other witnesses, or by the scientific witness himself, if they passed under his own observation. And the opinion must be founded upon a knowledge of causes and their effects, so uniform in their connexion, as to amount, in the language of Mr. Starkie, to the establishment of a new fact, relation or connexion, which would otherwise remain unproved.

Now, in the light of these views, let us examine, very briefly, the circumstances under which the opinions of the witnesses, in the case before us, were permitted to go to the jury; and also the character or elements of the opinions themselves. The statements made by the defendant Cooper, to the neighbors, on the morning that Fortson was murdered, had been narrated by several of the witnesses. Cooper's tale was a simple one. It had become a part of the case. His only hope of establishing his innocence, rested on the intrinsic probabilities of his story, on its consistency with itself, and on the inability of the prosecution to show the falsity of any part of it. If any one single fact that he had stated, could be shown clearly and indisputably to be false, then his whole story went like a feather in the whirlwind. Cooper had stated, that he neither saw the man who shot Fortson, nor did he hear him retreat. The wound, and the scorched clothing on Fortson's body, showed that the man who shot him must have held the gun within ten or twelve feet of his body, probably within a less distance. The road was a broad and open one. The ground was hard. It would have been next to impossible, that a man on horseback could have ridden up within ten or fifteen feet of Fortson, on such a road, and re-

treated, after shooting him, without being heard by Cooper. If a figure on horseback, or on an open road, in a star-light night, and at so short a distance, could have escaped Cooper's observation, he certainly must have heard the noise of the horse's feet, as the murderer retreated. But Cooper had said that he did not hear the murderer retreat. If, then, it could be shown, that the man who shot Fortson was on horseback, the lie was given to Cooper's whole statement; and to show the falsity of his statement was, in effect, to show himself the murderer. An opinion, then, that went to show that the man who shot Fortson was on horseback, was an opinion that touched the most sensitive nerve of Cooper's defence. It was equivalent to an opinion on the question of his guilt or innocence.

But on what facts was this opinion founded? Was any matter of science involved? Was it not a question about which the jury were just as competent to form a correct judgment, as any medical man, or any other man? To begin with, there was no circumstance in connexion with the killing established, outside of Cooper's own statement, except the fact, that Fortson was shot in the back. Cooper said that Fortson was on his horse's back when he was shot. There was no other proof of it. Cooper said that Fortson's body fell from the horse within a very few feet of where the horse stood, when the gun fired that did the murder. There was no other proof that the horse did not carry the body fifty yards or a hundred yards from where the gun fired, before the body fell. The witnesses then assumed a portion of what Cooper said to be true, and made it the basis of an opinion, which went to show, the remainder of what he said, to be false. Now, there was nothing in the nature of the wound itself, which caused Fortson's death, to show that he was on horseback when he received that wound. There was nothing in the nature of the wound itself, from which the conclusion could be drawn, as matter of science, that the man who inflicted it, must have been on horseback, or on some other elevation. It was not only assumed to be true, as Cooper had stated, that Fortson was on horseback, when he was shot, but it was also as-

sumed to be true, as Cooper had stated, that Fortson was carrying the hunting lamp on his head, at the moment he was shot; and in order to make it appear that the shot which killed Fortson came in a horizontal direction, and from an elevation as great as the middle of a man's body on horseback; it was stated by witnesses, that a man who carries a hunting lamp on his head, usually sits very erect, to prevent the spilling of the oil, which feeds the lamp. All these things were assumed as the basis of the opinions expressed by these witnesses. Now, if it was proved, that the wound was in the middle of Fortson's back, the jury could understand that perfectly. If it was proved, that Fortson was on horseback, when he received the wound, and that he was sitting in an upright attitude, on his horse, the jury could also understand those facts, without the aid of professional men. Let us now suppose, that in addition to these facts, it had been proved, that the balls or shot entered the body on the right side, and came out of the body on the left side, would the jury have needed the opinion of a scientific man, to inform them that the person who inflicted the wound, stood on the right side of Fortson when he fired? If it had been proved, that Fortson was sitting upright on his horse, when he was shot; that the ball which killed him, entered below his chin, came out on the top of the head, and perforated his hat as it passed off, would the jury have needed any scientific man, to inform them, that the weapon was pointed upwards, which inflicted the wound? Take the case as it is shown by the record. .The witnesses say, the wound was in the middle of the back—the shot entered the body in a horizontal direction—the ground was generally level, except a slight elevation on the right side of the road, just where the firing took place. Now, were not the jury as competent to say, whether the shot was fired by one on horseback, or on some other elevation, or on foot, as the medical men were? What medical skill was involved in the opinion? What scientific principle was involved? None that we are able to perceive, except such plain laws as are open to the observation of all persons, and are

in fact, familiar knowledge with the unlettered, as well as the learned.

We are of opinion then, that the court erred, in permitting the witnesses to state their opinions, in the manner exhibited by the record. But it may be said, that these opinions did not control the verdict of the jury. We think that too great prominence was given to them, by the charge of the court, to warrant us in saying, that the verdict was not influenced, by this portion of the testimony. The court might have corrected the error committed by the admission of this evidence, by instructing the jury, in such manner, as to destroy its effect; but instead of doing this, the charge of the court assumed, that the evidence was proper, and such as ought to be weighed by the jury.

It is to be remarked, that the testimony in this case, is wholly circumstantial. The one single fact, which tends to establish the guilt of Cooper, and which is entirely unexplained, is that he was present, by his own admission, when Fortson was killed, and that he had the means and opportunity to kill him. A tow wad was found, but the witnesses say, that tow is commonly used for wadding. Three sizes of shot are said to have been found in the body of Fortson, and Cooper's gun was loaded with shot of three sizes. But witnesses state that it is common to use mixed shot; and one witness stated, that he kept a store in the neighborhood; that he kept several sizes of buck shot, and that he had sold mixed shot to divers persons in the neighborhood. As was before said, then, the only circumstance wholly unexplained, which tends to show Cooper's guilt, is the fact, that he was present, and had the means of doing the deed. But he might have been present, and yet innocent of the blood of Fortson. It is shown, that they had hunted together at night, more than once before. There is no motive exhibited by the evidence, to induce Cooper to do the deed; and if Cooper be innocent of the crime, of which he is charged, it seems to us, impossible to conceive, that his conduct as an innocent man, could have been other than it is shown by the testimony to have been. We do not think it proper to enter into a discussion of the whole testi-

mony, and have only said thus much, in order to indicate, that we think the case was one in which all the rules of law ought to have been adhered to, with the most scrupulous care, and in which no error against the accused, can be passed over as unimportant.

These views will serve to show that we are of opinion, that the court below erred, in overruling the motion for a new trial. It is therefore ordered, that the judgment of the court below, be reversed, and the cause remanded for another trial.

Reversed and remanded.