## WILLIAM DILL *v.* THE STATE.

1. ROBBERY — EVIDENCE. — In a trial for robbery, the prosecution was allowed, despite objection by the defence, to ask the prosecuting witness why he surrendered to the accused the money alleged to have been robbed, and to elicit from the witness the answer that he believed, at the time, that he would be shot if he did not surrender it. The witness had already stated that the accused and another demanded the money with cocked fire-arms in hand, and threatened to shoot him. *Held,* that in admitting the inquiry and answer objected to, the court below did not err, although, as a general rule, a witness should not be permitted to state his opinion or belief.

2. PRACTICE IN THIS COURT. — It is well settled that this court will not revise the refusal of a continuance by the court below, unless a bill of exceptions was properly taken at the time, and is brought up in the transcript.

3. NEW TRIAL. — In a robbery case, the defendant asked a continuance, to procure certain witnesses to an *alibi.* The continuance being refused and a conviction had, he moved for a new trial, exhibiting, with his motion, two letters which were signed with the names of the *alibi* witnesses, and were addressed to the defendant's counsel, assuring him of their willingness and ability to prove the *alibi,* and the innocence of the defendant. The counsel swore to his receipt of the letters through the mail, but no showing was made of their authenticity. *Held,* that it was not error to refuse a new trial.

APPEAL from the District Court of Dallas. Tried below before the Hon. N. M. BURFORD.

The indictment was filed October 10, 1876, and charged that the appellant and one Jack Crews, on November 1,

1875, robbed one W. K. Cornish of a satchel and sundry currency notes of the United States, amounting to $1,050. It alleged that the robbery was effected by an assault upon Cornish with guns and pistols, and by putting him in fear of his life and of great bodily injury. Appellant alone was on trial.

Cornish was the principal witness for the State. He testified that, about sunrise on the 28th of September, 1875, he was returning from the depot of the Houston and Texas Central Railway, in Dallas, in an express-wagon, wherein was a small safe which contained a satchel. The satchel contained a number of packages of money, amounting to the sum of $1,100. Near a lumber-yard, and about four hundred yards from the depot, two men suddenly appeared, and the wagon stopped. Witness was sitting with the driver. One of the two men was on one side of the wagon, and the other upon the opposite side. One of them had a gun, and the other a six-shooter. One of them demanded the money in the safe. Witness thought he was joking, and asked him if he was in earnest. They said they meant business. Witness told them the money was in another wagon, which was coming on behind. One of them said, " Shoot him." Witness heard them cock their fire-arms, and told them to hold on, that he would give the money to them. Witness then unlocked the safe, took out the satchel, and handed it and its contents to one of the men. This man was the prisoner, William Dill. The men then rode rapidly away. Witness gave up the satchel because he believed they would shoot him if he did not.

On his cross-examination, the witness stated that he had never seen either of the men before that morning, and then for only about a minute. But witness was not much excited by the occurrence, and positively identified the defendant on trial as one of the men who committed the robbery. Subsequent to the robbery, witness learned what amounts of money were contained in the several packages. The

express company had to pay the amounts to the respective owners.

Allen, a witness for the State, testified that, a little after sunrise on the morning of the robbery, two men on horseback galloped by his house, which was some four hundred or five hundred yards from the spot where the robbery was committed. They came from that direction, and passed within twenty-five feet of witness's door. Dill, the defendant, was one of them, and was riding a very fine bay horse. Witness had never seen the men before, and had only a side-view of them as they passed his house; but he was positive that Dill was one of them, and after Dill was arrested, witness pointed him out in jail. The other man rode on the opposite side of Dill from witness, who, therefore, did not get a full view of him.

Jordan, for the State, testified that, on the same day as that on which the robbery was committed, and about an hour before sunset, he was at the Trinity River, about twelve miles west of Dallas, when two men rode up to the bank and stopped, about fifty yards from him. One of them was Dill, the defendant, whom witness had well known for three years. Witness did not know the other man. After standing a few minutes, they rode on up the river, and witness, who was driving a wagon, went on the same way. He drove in a trot, and passed them. They gave him the road, and he passed between them. Dill has lived in Dallas County, about eight or ten miles from the city of Dallas, and has worked on a farm since witness has known him.

On his cross-examination, this witness stated that he did not like any of the Dill family, as Dill had once been the cause of witness's father having to pay some money. When witness saw the two men at the Trinity River, one of them had a gun and the other a six-shooter. Dill was riding a very fine bay horse, and the other man a light-colored horse. Witness was surprised at seeing Dill there,

as he supposed he was a fugitive in Arkansas. This closed the evidence for the State.

Mrs. Dill, the wife of the defendant, testified that she and her husband had lived in Dallas County for five years, during most of which time he had worked on a farm. He had been at home nearly all that time, and visited the town of Dallas very seldom. He was a man of a very quiet and timid disposition, and not adventurous or daring. About the last of August, 1875, he left home for Hill County, to pick cotton; and during the months of September and October, 1875, witness received letters from him which were dated from Towash, which is in Hill County. Witness had not taken particular care of the letters, and they were lost. If Dill was in Dallas County at any time during the month of September, 1875, witness did not know it. She and all the family understood him to be in Hill County during that time, but she could not say that she had received any letters from him there of later date than September 15, 1875. This witness stated that her mother, Mrs. C. M. Dill, kept the letters.

Mrs. C. M. Dill, mother of defendant's wife, concurred in most respects with the statements of the latter, but said that her daughter, and not herself, was the keeper of the letters received from Dill in September and October, 1875. Witness did not know where the defendant was on September 28, 1875, the day of the robbery.

Robert Haton, a son of the last witness, testified that during September, 1875, the defendant's wife received letters from the defendant from Hill County. Witness brought the letters to her from the Dallas post-office.

This concluded the evidence in the case. The defence objected to some of the testimony introduced by the State, on grounds clearly disclosed in the opinion of this court.

The jury found the defendant guilty, and assessed his punishment at ten years' confinement in the penitentiary. The defence moved for a new trial, on the usual grounds,

and at a later day of the term filed an amended motion. This amended motion was predicated on two letters received by the defendant's counsel since the trial, and they were exhibited with the motion.   One of them was dated Johnson County, and purported to be from John Terry, and to the effect that he would swear that, from the 1st of September to the last of October, 1875, he and Dill, the defendant, picked cotton on the same place in Hill County, and that Dill did not leave the place during that time, and could not have been at Dallas on the day of the robbery.   The other letter was dated Johnson County, and purported to be from W. Wormick, and to the same general effect as the letter signed John Terry.   The counsel of the defendant made oath that he received these letters through the mail, but neither he nor the defendant himself swore that they were genuine letters of persons bearing the names subscribed to them.   The defendant's motion for a continuance designated William Wormick, a resident of Hill County, as one of the absent witnesses whose testimony was material to the defence.   The court below overruled the motions for new trial, and at a subsequent term judgment was rendered against the defendant *nunc pro tunc*, upon his own motion, and he appealed from the judgment.

No brief for the appellant has reached the reporters.

*Thomas Ball*, Assistant Attorney-General, and *W. B. Dunham*, for the State.

WINKLER, J.   On October 14, 1876, the appellant was tried in the District Court of Dallas County, on an indictment charging him and another with robbery, charged to have been committed in the county of Dallas, on November 1, 1875 ; and of the charge he was found guilty by the jury, and punishment was assessed against him of confinement in the State penitentiary for a period of ten years.   A motion

and an amended motion for a new trial were made, and were by the court overruled; and the accused was remanded to custody, to "await the further order of the court." A statement of facts was prepared and filed, and the case was otherwise prepared for appeal, but no final judgment was rendered against the defendant in the District Court.

At a subsequent term, — to wit, on August 21, 1877, — the accused filed a motion in the District Court, in which he avers, "that he was found guilty of the crime of robbery, by a jury, on the 14th day of October, 1876, and his punishment assessed by said jury at ten years in the penitentiary of this State, but that no final judgment has been rendered against him by this court on the verdict of said jury. * * * Wherefore defendant asks that an order be made by this court that a final judgment be rendered *nunc pro tunc* in this cause." In response to this motion, the court proceeded to enter a final judgment of conviction against the appellant, approving the verdict of the jury theretofore rendered, and ordering the conveyance of the appellant to the State penitentiary, to be there confined for the period of ten years; and from this judgment the present appeal is prosecuted.

The following supposed errors are assigned: " 1. The court erred in its ruling, on the testimony (see bills of exception). 2. The court erred in overruling defendant's motion for a new trial."

By reference to the bills of exception (which, being the only bills of exception set out in the transcript of the record before us, we presume are the ones mentioned in the assignment of errors) it appears, from the first, that the witness upon whom the robbery is alleged to have been committed, during his examination, was asked why he gave up the money; to which he answered, that "he gave it for the reason that he believed, at the time, he would be killed if he did not give it up." This testimony counsel moved the

court to exclude from the jury, for the "reason that it was not competent for the witness to state his fears, or belief, or the impression on his mind at the time, and that the witness should be held to state the acts and conduct of the defendant at the time, and what the defendant actually did." The court refused to exclude the testimony, and counsel for defendant took a bill of exceptions to the ruling.

The matter presented by the second bill of exceptions is quite similar to that set out in the first. The same witness was asked why he "gave up" the money in question, which was objected to by counsel on grounds similar to those upon which it was moved to exclude the testimony mentioned in the first bill of exceptions. The objection was overruled, and exception taken.

In order to determine the importance of the testimony about which these questions arose, and the correctness of the rulings of the court complained of, it is proper that we should look to the whole testimony of the witness, as disclosed by the statement of facts. The witness having detailed the circumstances under which he discovered the persons accused of the robbery, and when and where it took place, and a *finesse* to mislead them, he says: " One said, ' Shoot him.' I heard them cock their gun and pistol; I told them to hold on, I would give the money to them. I unlocked the safe, took out the satchel mentioned, with its contents, and handed it to one of the men, who was the prisoner, William Dill. They then rode rapidly away. I gave up the satchel because I believed they would shoot me if I did not." It seems that the question raised in both the bills of exception alludes to the concluding paragraph or expression of the extract, to wit: " I believed they would shoot me if I did not " give up the money.

Whilst it is conceded that, as a general rule, " witnesses must speak as to facts, and cannot be permitted to give their belief or opinions " ( *Cooper* v. *The State,* 23 Texas, 331),

yet it is not perceived that, coming as it did, and in connection with the facts testified to, there was any material error in admitting the testimony. We are of opinion it was competent for the witness to state the effect the acts and conduct of the parties had upon him at the time.

The other error assigned is the overruling the motion for a new trial. The first ground of the original motion is, "because the court erred in overruling defendant's motion for a continuance." It is a settled rule of practice that this court will not revise the ruling of the court below, on application for a continuance, unless the question be saved by a proper bill of exceptions to the ruling, taken at the time it was made, and so shown by the record. *Owens* v. *The State*, 4 Texas Ct. App. 153. This rule was established by the Supreme Court before the organization of this court. *Allen* v. *The State*, 4 Texas Ct. App. 581, and authorities there cited. Finding no bill of exceptions in the record as to the ruling of the court, we would unsettle an established rule of practice to consider the subject now.

The objection to the amended motion for a new trial is, that certain letters appended thereto, on the subject of proving an *alibi*, are not sworn to. The second ground of the motion is, that "the court erred in its rulings on the testimony in said cause." This we have already considered, in connection with the first assignment of error. The other ground set out in the motion is, that the verdict is contrary to the law and the evidence.

In considering the law of the case, as we find it in the record, in the several rulings, and in the charge of the court, and the testimony as shown by the statement of facts, we are of opinion the court did not err in refusing a new trial.

From a careful examination of the whole case, not only as to the several matters complained of in the assignment of errors, but elsewhere, we are of opinion that the law

of the case has been impartially administered, and that the accused has been convicted on proper and legal testimony; and, finding no such error in the proceedings as would warrant us in interfering with the judgment of the District Court, it is affirmed.

*Affirmed.*