## EBOS VS. THE STATE.

1. EVIDENCE: *Medical expert, opinion, etc.*
   A medical witness, after examination of a wound upon the head, inflicted by a blow with a club, may testify his opinion that the blow produced the death of the party by concussion of the brain, without opening the skull and examining the brain.

ERROR to *Garland* Circuit Court.
Hon. J. N. SMITH, Circuit Judge.
*G. W. Murphy*, for appellant.
*Henderson, Attorney General, contra.*

ENGLISH, C. J. Indictment in the circuit court of Garland county, charging in substance that John Ebos, on the twenty-sixth of April, 1878, murdered Mary Ebos, by

striking her on the right side of the head with a large stick or club.

The accused was tried by a jury, on plea of not guilty, found guilty of manslaughter, and his punishment fixed at imprisonment in the penitentiary for seven years; a new trial was refused him, and he was sentenced in accordance with the verdict, took a bill of exceptions and brought error.

The court gave all of the instructions to the jury, moved for the prisoner, which were fair and favorable, and he objected to none given on the part of the state.

· I. In the motion for a new trial there were the usual assignments, that the verdict was contrary to law, the instructions of the court, and the evidence.

It will be sufficient to state the leading facts, which the evidence introduced at the trial conduced to prove.

About dark, on the evening of the twenty-sixth of April, 1878, when *Mary Ebos*, wife of Bertrand Ebos, and step-mother of the prisoner, was in her kitchen with a half-sister of the prisoner, Josie Ebos, about ten years old, getting supper, the prisoner went into the kitchen, and struck her (*Mary*) on the right side of the head, with a piece of board timber, which, with other pieces, had been brought into the house to kindle a fire. She fell on the stove, rolled off the stove on to the floor, and remained there awhile, sitting, supporting her head with her hands, and then pulled herself up by the safe and got on a bed. She seems to have said but little after she was struck, but to exclaim, "Oh, my head!" She finally became speechless and died shortly after midnight. This was in Garland county.

Immediately after the prisoner struck her with a stick,

"he took down a pistol," went to a neighboring house where he lodged, and put it under the head of his bed.

That he disliked his step-mother is shown by expressions made by him, both before and after he struck her the fatal blow.

Had the jury found him guilty of murder, we should not have disturbed the verdict.

II.   Dr. William H. Barry testified that on the twenty-seventh of April, 1878, he was called upon to make a *post-mortem* examination upon the body of Mary Ebos, and did make a superficial examination of it.   That he found upon the right side of her head, just above the temple bone, a severe contused wound, about six inches in length, and from about one and a half to two and a half inches in width, to the skull.

That the skull was not fractured, and he discovered no injury to it.   That this was the extent of the *post-mortem* examination.   That there was a burn on the left breast and arm, which, however, did not contribute to the death. That he did not open the head or examine the brain.

That he was a graduate of medicine, and a practicing physician and surgeon.   That the body had been dead for several hours, and was offensive when he saw it.

The attorney for the state then asked the witness his opinion as to the cause of the death of the deceased. The prisoner objected, on the ground that no sufficient foundation had been laid for such opinion.   The court overruled the objection, and the prisoner excepted.

Witness then testified, in answer to the question, that such a wound as that upon the head of deceased might produce death, and frequently did, and that in his opinion, said wound did cause the death of the deceased by concussion of the brain.

The ruling of the court, permitting the witness to give his opinion as to the cause of the death of the deceased, upon examination made by him, was made ground of the motion for a new trial.

The medical witness examined the wound, its character, extent and dangerous location, and was aware of the length of time that had transpired between the giving of the blow and the death of the subject, the appearance of the body, etc. *2 Beck Med. Jurisprudence, pp. 330, 338.* From the examination which he made, his observation, experience, and professional reading, he formed the opinion that the wound caused the death ; and we are aware of no law that required him to open the skull and examine the brain before he could be permitted to express such opinion to the jury. Of course, the opinion of a medical witness in such case would have more or less weight with the jury, according to the extent of the examination, the professional rank and character of the witness, etc.

III. The prisoner asked a witness (J. Bull) whether the deceased was not addicted to excessive use of snuff, and violent fits of passion. Objected to by the state, ruled out by the court, and made ground of the motion for a new trial.

" Counsel for the prisoner stated that they asked the question for the purpose of proving that deceased was subject to extreme fits of passion, and had been for many years excessively addicted to the use of snuff, and they desired the evidence as a basis for the introduction of medical witnesses to prove that the habits and temperament indicated the probable presence of a condition from which sudden death might well have resulted, without reference to the blow."

It has been held not admissible for a medical witness to give an opinion on merely speculative data. *1 Wharton Evidence, sec. 441.*

No evidence was introduced, and none was offered, to prove that the deceased was in a violent fit of passion, or had taken an overdose of snuff, at the time the prisoner struck her with a stick. She appears to have been engaged in getting supper, and manifested suffering and increasing stupor from the time of the blow to her death.

If she was addicted to fits of passion and excessive use of snuff, such habits furnished no excuse for the prisoner to strike a woman, and his step-mother, a blow with a stick, that manifestly, from all the evidence, caused her death.

Affirmed.