**Lansford COOK et ux., Appellants,**

**v.**

**C. J. WOFFORD, Appellee.**

**No. 17420.**

Court of Civil Appeals of Texas,
Dallas.

March 20, 1970.

Rehearing Denied April 17, 1970.

Wm. Andress, Jr., Andress, Woodgate & Hartt, Dallas, for appellants.

Emmett Colvin, Jr., Robert O'Donnell, O'Donnell, Koons & Street, Dallas, for appellee.

BATEMAN, Justice.

In this child custody case Mrs. Frances Cook, maternal grandmother, and her husband Lansford Cook, sought the care, custody and control of two small children of C. J. Wofford and his first wife Barbara. The jury verdict was in favor of the father, and Mr. and Mrs. Cook appeal from the judgment rendered thereon.

Appellee and his first wife were divorced, and in that proceeding custody was given to the mother, Barbara, but she died shortly thereafter. During Barbara's terminal illness her mother, whose home was and is in Houston, Texas, spent a great deal of time managing the home for Barbara and the children.

Mrs. Cook testified that she was 58 years old, had two college degrees and is a teacher and counselor employed by the Houston Independent School District; was divorced from Barbara's father, and her present husband is 62 years old, also a college graduate and a barber. They have a three-bedroom home in Houston, in which each of the children would have a separate bedroom.

Appellants' attack on the fitness of appellee to have custody of his own children is based entirely on the facts that his present wife was formerly a prostitute for more than a year in a New Orleans brothel, where he met her; that she had four children by her first husband and abandoned them to him when they were divorced; that her second husband was an ex-convict who had been in the penitentiary for white slavery, and that he and she both used narcotics. She had one child, Benjamin, by the second marriage. Appellee is her third husband.

Appellee and his wife in their testimony candidly admitted the foregoing facts, but in mitigation thereof she testified that she was only 17 years old when she first married and that she agreed that her first husband have custody of the four children because she was financially unable to feed and clothe them, whereas their father could do so and had married a fine woman who agreed to take care of them; that her second husband arranged for her employment in the house of ill repute, and that she did not know that he was an ex-convict or a user of narcotics when she married him, and that she divorced him. She said the only drug she used was "some kind of pep pill," which she quit using after approximately six months; that she never worked as a prostitute except in the New Orleans place; that she met with appellee twice while she was there, after which she left the house of prostitution and lived in an apartment in New Orleans, shortly thereafter moving to Fort Worth, Texas, where she went to business school for six to eight months; that after completing the business course she worked as an office assistant for the R. J. Reynolds Tobacco Company until her marriage to appellee on July 21, 1967; that while living in Fort Worth her son, Benjamin, attended church regularly and continues to do so; that after her marriage to appellee she, appellee and Benjamin began living in Arlington, Texas, where she was active in the Ladies Guild of St. Bartholomew Episcopal Church, which she and her son attended regularly; that in Arlington she was Social Chairman in the PTA and attended its meetings regularly.

Appellee testified that he is employed by an oil company at a monthly salary of $1,100; that he did not take his present wife out of the house in New Orleans, but that after she "started to go straight and get her life in order" he contributed financially to her support, that he also "helped her out financially" when she lived in Fort Worth and in Arlington. He said he was divorced in June, 1963 and was ordered to pay $300 per month for child support, which he paid regularly and in addition thereto bought the children clothing, paid for their summer camp trips, their doctor bills, the dentist and the orthodontist, all amounting to approximately $640 per month; that he was actively involved with the children's school and knew all of their teachers personally, having visited with each of them to see if he could help in their schooling and outside activities, that he was interested in PTA, the science fair programs, outside sports activities and the YMCA; that he checked out books for them at the public library and made every attempt to make sure that their schooling and the relationship that they had in school were not affected by the divorce; that he visited the school every two weeks and

sometimes much more often; that he was also active in the Indian Guides, a father-son participation program.

There was testimony by friends and neighbors, including an Episcopal minister, all to the effect that Mrs. Wofford, who was 34 years of age, had become a good mother, a good neighbor and a good citizen, and that her son, Benjamin, was well looked after and was well mannered.

Appellee's son, 11 years of age, testified that he would prefer to live with the grandmother. Appellee's daughter is not shown to have expressed a preference.

■ Appellants' first two points of error on appeal complain of the action of the court in permitting Mrs. Wofford (1) to explain why she surrendered custody of her four children to her first husband, and (2) to relate her plans to regain custody of those children as soon as she became able to make a home for them. We know of no rule of law that would prohibit one from endeavoring to palliate such disparaging evidence by showing extenuating circumstances. The first two points are overruled.

■ By Points of Error 3, 4 and 5 appellants complain of the admission of testimony: (3) of a neighbor that Mrs. Wofford was a good mother; (4) of her minister concerning the nature of her discipline over her son Benjamin; and (5) of a friend of appellee to the effect that the relationship between appellee and his son did not appear to be strained at any time. Appellee was entitled to the benefit of this testimony in contradiction of the attack made upon him and his wife. These were not matters calling for expert testimony. The witnesses were shown to have more or less intimate knowledge of the persons involved, yet the facts upon which the opinions were based were so numerous, complicated or evanescent that they could not be communicated to the minds of the jurors by words or gestures in such a manner as to give them the knowledge possessed by the witnesses. In other words, the opinions complained of were "an automatic reflection of facts incapable of adequate description to the jury," or "a shorthand rendering of the facts." They were admissible. McCormick & Ray, Texas Law of Evidence, §§ 1397 and 1398; Cooper v. State, 23 Tex. 331, 338–339 (1859); Stephen v. State, 123 Tex.Cr.R. 505, 293 S. W.2d 789 (1956). However, if error was shown, it was harmless. Rule 434, Vernon's Texas Rules of Civil Procedure. Points of Error 3, 4 and 5 are overruled.

Appellants' sixth point of error complains of the trial court's instruction to the jury after the argument and during the jury's deliberations. While appellants' trial attorney (not one of the attorneys appearing in this court) was arguing to the jury he made the following comment concerning appellee:

"He was the natural father of the children, and he loved his children. He really loved his children. He loved them so much that when his wife was dying of cancer he was out in New Orleans in a house."

Appellee quickly jumped to his feet and shouted to the attorney making the argument, "You're a God Damn liar." After retirement of the jury for deliberation the jury sent this note to the trial court:

"When you say 'seen' in the Court Room do we construe this to refer to the documentary evidence only, or observation of the witnesses as well?" *

---

\* This undoubtedly refers to paragraph 2 of the court's charge, as follows:
"In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the Court; that is *what you have seen and heard in this courtroom*, together with the law as given you by the Court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case." (Italics ours.)

**695**

The court replied in writing as follows:

"You are required to make your decisions solely from the testimony given under oath by the witnesses from the witness stand."

No objection was made to this instruction at the time it was made, but after the verdict was returned the instruction was complained of in a motion for mistrial and a motion for new trial, both of which were overruled.

■ Appellants now argue that appellee's blasphemous outburst was evidence of an ungovernable temper which the jury should have been permitted to take into consideration in passing on his fitness to have custody and control of his children, and that the effect of the court's note to the jury was to tell the jury that they could not take the outburst into consideration at all. We do not think this instruction presents reversible error.

In the first place, we are not convinced that appellee's explosive comment upon the attorney's veracity would necessarily prejudice appellee in the eyes of the jury. The stinging, sarcastic rebuke contained in the attorney's argument was quite unwarranted because there was no evidence in the record that appellee's first wife was afflicted with cancer at the time he was in New Orleans and, while we do not at all approve appellee's outburst, if no objection had been made to this argument and appellee had remained passive, there may have been at least some members of the jury who would have formed the opinion that he lacked strength of character. For all we know, some of the jurors may have admired appellee for speaking out, though in a profane and vulgar manner, when this unsupported accusation was hurled at him. For this reason, we would hold that the error implicit in the instruction was not shown to have been of sufficient moment to warrant reversal. Rule 434, T.R.C.P.

Moreover, we do not think appellants could properly refrain from objecting to the instruction when it was given and speculate upon the outcome of the jury deliberations before voicing such an objection. We hold that the objection was waived. Rule 272, T.R.C.P. For these reasons, the sixth point of error is overruled.

■ By their seventh point of error the appellants complain of the phraseology of the single issue submitted to the jury, which instructed the jury to find from a preponderance of the evidence "which of the parties, the father, Mr. Chancey Jackson Wofford, or maternal grandmother, Mrs. Francis Cook and husband Mr. Lansford Cook, is best suited to have the care and custody, control, etc." The complaint is that the special issue does not mention appellee's wife. This objection, not having been made at the time of trial, was waived. Rule 272, T.R.C.P. Point 7 is overruled.

By their eighth point of error the appellants assert that the cumulative effect of all of the matters complained of in the first seven points of error "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment," citing Southern Pacific Company v. Hubbard, 156 Tex. 525, 297 S. W.2d 120 (1956), and Scott v. McLennan County, 306 S.W.2d 943 (Tex.Civ.App., Waco 1957, writ ref'd n. r. e.). We are quite aware of the rule announced in those cases, but we see no similarity between the facts therein and the situation of this case, or any basis for holding that the said individual rulings of the trial court collectively present reversible error. Therefore, the eighth point of error is overruled.

In their ninth point of error appellants say there is no competent evidence to sustain the verdict. In passing upon this question, we must reject all evidence favorable to appellants and consider only the facts and circumstances which tend to sustain the verdict. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359, 363 (1957). We

think it is apparent from the facts of the case as summarized above that there was ample evidence to support the verdict. The ninth point of error is overruled.

■ We also overrule the tenth point of error complaining that a guardian ad litem for the children was not appointed by the court. Without passing upon the question of whether appellants had a justiciable interest in the matter, we hold that they waived any right they may have had to complain by their failure to object at a time when the trial court could have made the appointment, if one should have been made. No property rights were involved, and we know of no authority requiring the court on its own motion to appoint a guardian ad litem in this type of case. Huber v. Buder, 434 S.W.2d 177 (Tex. Civ.App., Fort Worth 1968, writ ref'd n. r. e.).

■ In their argument under Point 10 the appellants assail the constitutionality of the 1961 amendment to Vernon's Ann.Civ. St., Art. 4639a, providing that in any child custody hearing where a jury is demanded the judgment of the court must conform to the jury's determination of custody. Counsel for appellant made this same contention in Welch v. Welch, 369 S.W.2d 434 (Tex. Civ.App., Dallas 1963, no writ). We upheld the constitutionality of the amendment there, and we do the same here. The tenth point of error is overruled.

Under Point 11 appellants contend that the verdict is so contrary to the overwhelming weight and preponderance of the evidence "as to shock the conscience of a chancellor," and under Point 12 that "it is wrong as a matter of law" to place these small children into the custody of appellee and his wife in the face of the evidence as to their past conduct, when there is available "a grandmother's home without blemish for which the little boy has expressed a preference." We have carefully reviewed the entire record in the light of these contentions and find no basis for sustaining them. They are accordingly overruled.

Finding nothing in the record that would in our opinion warrant us in disturbing the verdict and judgment in this case, we decline to do so and affirm the judgment.

Affirmed.