JAMES A. HAYNIE V. WILLIAM M. BAYLOR.

If one is accustomed to undertake, for hire, to transport the goods of those who
choose to employ him, though it be not his constant or usual, but only an
occasional occupation, he is a common carrier within the rule laid down in
Chevaillier v. Strahan, 2 Tex. R. 115 ; at least, whenever he holds himself
out in any way to the public as a carrier, or undertakes as a matter of busi-
ness and profit, the transportation of goods.

But because one whose principal occupation is farming, does this occasionally,
and at certain seasons only, is he therefore necessarily to be deemed to incur
the responsibility of a common carrier, at all seasons, and in reference to
every contract he may make to carry goods, under whatever special circum-
stances ?   We think not.

See this case for circumstances under which it was held that it was proper for
the Court to refer to the jury the question whether the defendant ought to be
held to the responsibility of a common carrier, or whether, as to the particular
employment, he was not a private carrier, and only responsible as such ; and
the jury having found for the defendant, it was held there was no error in
the refusal of the Court below to set aside the verdict.

Where the question was as to the cause of the burning of a wagon load of goods
in the course of transportation, it was held that the opinions of witnesses
who were at the place soon after the burning, formed upon grounds stated
by them, were not admissible in evidence ; it was for the witnesses to de-
pose only to the matters of fact, which came to their observation or know-
ledge, and leave the jury to draw their own conclusions from the facts and
circumstances deposed to.


Appeal from Fayette.   Tried below before the Hon. James
H. Bell.

Suit by appellant against appellee for $596 82, the value of
certain merchandise which the defendant undertook to trans-
port by wagon, for plaintiff, from Texana to LaGrange, and
which he failed to deliver.   It was alleged that the defendant
received the goods in the capacity of a common carrier.   An
amendment of the petition charged the defendant as a private

carrier, in case of failure to prove that he was a common carrier. Answer, denying that defendant was a common carrier, alleging that he was a farmer, and undertook to haul the goods in this instance for the accommodation of the plaintiff, and that they were accidentally consumed by fire, on the road, without any fault of defendant.

Plaintiff proved the purchase by him of the goods in Galveston, with the prices and charges, paid; that the retail price of goods at LaGrange was thirty-three per cent. added to the cost price at Galveston; the receipt of the goods at Texana in good order, in the way of transportation, by a forwarding and commission house, C. L. Owen & Co.; that witness was a member of said firm; that on the 25th day of January, 1855, C. L. Owen & Co. forwarded said packages of goods to plaintiff at La-Grange by the wagon of defendant; that said C. L. Owen & Co. agreed with said defendant, that the defendant was to deliver said packages of goods to plaintiff; the plaintiff to pay the freight for same at the rates of one dollar and fifty cents per hundred pounds, as per the wagoner's receipt of said Baylor, as follows:

"Received, Texana, 25th January, 1855, of Clark L. Owen " & Co., in good order, the following named merchandise, viz.:
(Here description of packages.)
"which I promise to deliver, without unnecessary delay unto " J. A. Haynie, Esq., LaGrange, he paying freight on same at " one 50-100 dollars per 100 lbs.

"Duplicate . (Signed) W. M. BAYLOR."

On cross-examination said witness testified that said packages were the only lot of goods shipped by plaintiff, through the firm of C. L. Owen & Co; that it was unusual to ship goods to LaGrange, through Texana; that he does not know that goods for LaGrange are never shipped to LaGrange through that point except to meet some special agent to haul them; that he knows nothing of the points through which plaintiff was in the habit of shipping his goods; that C. L. Owen & Co. were not specially directed by plaintiff or his

agents to send said lot of goods by defendant, Baylor ; that it was at the earnest solicitation of C. L. Owen & Co. that defendant consented to haul said goods ; that, in so doing, C. L. Owen & Co. were acting as agent of plaintiff as receivers and forwarders ; that witness has no recollection of C. L. Owen & Co. informing defendant, that it was plaintiff's special request that defendant should haul said load of goods ; that defendant had engaged for himself a load of goods, or groceries, to bring up with him before he was requested to haul said goods.   It was with great hesitation that defendant consented to leave his own load and take that of plaintiff.   Witness, as one of the firm of C. L. Owen & Co., went with defendant, and assisted him in obtaining a release from the obligation to take a load of his own from other merchants.   Defendant reluctantly consented to take said load for Haynie.   Defendant said he would only consent to take the load as an accommodation to plaintiff, as a neighbor.   Defendant stated that he had not gone to Texana, expecting to find merchandize there for LaGrange, but merely to take off a remnant of his own crop, to see the place and country, &c., and that he hauled the load of goods to accommodate plaintiff.   The goods, when delivered to defendant, were placed in a safe conveyance, and protected in the usual manner adopted by persons hauling goods in Texas.   While at Texana defendant took the same care of said goods that a careful man would of his own goods, under similar circumstances.   It is customary in Texas to convey goods from place to place in the same manner that defendant used in conveying those of plaintiff.   It is customary to use the same character of team and driver, as that used by defendant.   The same driver hauled defendant's cotton to Texana, and a portion of plaintiff's ; judges that he was such a driver as a careful man usually entrusts with his team.

Charles S. Longcope, witness called by plaintiff, was acquainted with the defendant ; had known him for a good many years.   During the time witness was merchandising in La-

grange, defendant had applied to him to engage hauling, by wagon, to and from the coast, but he had not employed defendant, himself, to haul for him. Witness was under the impression that for several years previous to this suit, defendant had been engaged, hauling for other persons, but could not state any particular instance of his doing so.

James L. Gay, for plaintiff, testified that he was well acquainted with defendant; lived near to him. In the Fall of 1854, defendant made application to witness to haul cotton to Houston. Witness engaged him, and defendant hauled a load of cotton for him to Houston at that time for about $1 per hundred. Defendant brought back a return load of freight for witness, for which witness paid him about the same price. Witness was certain that, for several years previous to the loss of plaintiff's goods, defendant had been engaged hauling for other people, but could not remember any particular instances. Witness was a cotton planter; never hauled his own cotton to market; that cotton planters rarely ever hauled their own crops to market in this section of country, but employed others to do so for them. Many small farmers hauled, in the season for that business, for hire, and, when they raised cotton, carried their own crop to market. Defendant never raised but one crop of cotton, to witness' knowledge, which was in 1854. Defendant told witness, at the time he engaged the load of cotton before spoken of, that defendant was going into the wagoning business. In the summer or Fall, of 1854, defendant had a man employed to build him a couple of wagons; one was built, and the workman left before completing the other. Defendant was indebted to witness at the time of the hauling spoken of and witness credited Baylor's account with the price for the hauling; but there was no understanding between witness and defendant, that such should be done at the time of the hauling.

Abel Howington, for plaintiff, stated that he was well acquainted with defendant; had lived within a few miles of him

for a number of years.   Defendant was  but a  small. farmer ;
had but one field hand, a  negro woman.   Several years ago,
defendant had been engaged in the  wagoning business to and
from the towns on the  coast, but about 1851 or 1852, defend-
ant told him he had sold out his wagons.   In  1853  or  1854,
defendant informed witness that he was going into the wagon-
ing business again, and would run several wagons ; that defend-
ant had employed a man to make him  two  or three  wagons.
Defendant had a negro named Armstead, a trusty negro and  a
good wagoner ; that he did  not know  of defendant's hauling
for several years before the time of his going to Texana, when
his wagon was burned.

John Rosenfield, for pltff., stated that he had been a dry goods
retail merchant for several years prior and up to the summer of
1855, in the town of LaGrange.  Defendant applied to witness
in the Fall of 1853, to engage hauling to and from the forward-
ing towns on the coast ; but having none  to engage, did not
employ defendant.   Prior to  this suit defendant had been en-
gaged in hauling by wagon for other persons, but witness could
not specify any instances that occurred.

John G. Izzard, for plaintiff, testified that he was  well ac-
quainted with defendant ; had known him  for ,many  years ;
witness was an  old  resident of the  county ;  had  wagoned a
good deal himself.   Witness and defendant were  both small
farmers.   For the last fifteen years witness had been engaged
in hauling for hire, whenever  he could  make something by it.
Defendant had done the same way.   Witness went in company
with defendant's  wagon at the time he  hauled  Gay's cotton.
Defendant had, on several occasions prior to  the  suit, spoken
to witness of sending their wagons in  company  to Houston.
Knew defendant's wagon  and  team, and has  frequently seen
them in the last several years and previous to this suit, on the
road to and from Houston  with freight.   Defendant told  him
at the time he went to Texana, that he had engaged part of a
load from plaintiff, and would take some of his  own  cotton.

The wagon driver of defendant was a negro man, named Armstead, a trusty negro and a good wagoner.

Brashear, a witness for plaintiff, testified that he was well acquainted with defendant; lived four or five miles from him; knew of defendant's hauling in 1847; went to Houston with his wagon. Defendant told him of his going to Texana, loading his wagon with some of his own cotton and some for plaintiff. Defendant told him he was going into the hauling business to Texana and back: that it was a new trade and would be a good business; that it was frequently the practice with wagoners to buy loads of their own as return freight, and sell out the same on return: that he knew negro man Armstead, of defendant; he was a trusty negro and a good wagoner. Witness did not know of any instance of defendant's hauling for other persons since 1847.

The defendant then read depositions of witnesses, proving the burning of the wagon and its load. The witnesses could not testify as to the cause of the burning or any circumstances thereof, except from the appearance of the place immediately afterwards.

The driver came to the house of one of the witnesses, and requested one of the witnesses to go out to the road, telling him that he had had bad luck, and had got his wagon burned. There was testimony, at considerable length, as to the appearance of the place, the object of which was to show that while the wagoner was off after his oxen in the morning, the wagon was approached by some other person, partially robbed and then fired.

Among the interrogatories propounded to witnesses by defendant, was one, No. 13, and answer thereto as follows: Intg. 13. State whether or not you noticed any circumstances of the burning, which indicated to your mind whether it was burned by accident or by an incendiary.

Answer: The tracks above mentioned, the situation of the camp fire, the course of the wind, and a large fresh gap in the

axe, led witnesses to believe that the burning was the work of an incendiary.

To the admission of this interrogatory and answer, there was a bill of exceptions by plaintiff.

A. P. Manly, for defendant, testified that he was acquainted with defendant ; had been his family physician for a number of years ; had been to his house frequently during that time. Witness never knew defendant to be engaged in the wagoning business. Defendant was a small farmer ; witness saw some wagons about his premises. Defendant sometimes fixed up old wagons and sold them. Defendant lived near a thick bottom of timber, where there was plenty of firewood, &c., near the house. Witness lived about six miles from defendant in the village of Fayetteville. Did not know defendant's oxen or wagon, and would not if he should see them.

C. B. King, for defendant, knew defendant's negro, Armstead ; had frequently saw him on the road ; always heard he was a good wagoner and trusty negro.

The Judge charged the jury, without request, as follows :

A common carrier is one who, either habitually or occasionally transports goods for hire for such persons as choose to employ him.

A common carrier is liable for any loss which is not occasioned by the act of God, or of public enemies. It does not matter whether the loss is occasioned by an accident or cause which no human skill or care could have prevented; the common carrier is still liable, unless the loss is directly caused by the act of God, or public enemies.

Where goods are carried at the special instance and request of the owner, or of the agent, and under a special agreement, then the carrier is not liable as a common carrier, but only as a private carrier.

A private carrier, for hire, is required to take such care of the goods, which he undertakes to transport, as a man of ordinary prudence and care usually takes of his own property ;

and a private carrier for hire is liable for any loss which might have been prevented by the exercise of ordinary care and prudence.

If the plaintiff is entitled to recover of the defendant either as a common carrier, or a special carrier for hire, the measure of damages is the same.    The measure of damages is the value of the goods in the town of LaGrange.

Verdict and judgment for defendant.    Motion for new trial overruled, &c.

*A. R. Gates* and *W. R. Jarmon*, for appellant.   I. The testimony of six witnesses for plaintiff, as well as that of defendant's witness, C. B. King, incontestibly shows that appellee was a common carrier, within the rule laid down in the case of Chevalier v. Strahan & Strahan, 2 Tex. R. 115. A. P. Manly, the only remaining witness for defendant, merely says "that he did not know of defendant being a wagoner."

II. Then we maintain that the mere fact that the forwarding merchants, Messrs. Clark L. Owen & Co., may have importuned the defendant to take the loading of plaintiff ought not and could not, in any event, have the effect to limit or control defendant's liability.   It is well settled that a common carrier can only limit his liability by a special contract.   (See 3 Stew. & Por. A. R. 135.)   The receipt of the defendant contains the very highest evidence of his contract.   In it there is neither restriction nor limitation of his contract.

III. In reference to the facts as proved on the trial, the Court below manifestly erred in charging that " where goods are carried at the special instance and request of the owner, or his agents, and under a special agreement, then the carrier is not liable as a common, but as a private carrier."   It is respectfully submitted, that this charge was totally inapplicable, without explanation or qualification, to the facts of the case, and was therefore well calculated, and doubtless did mislead

the jury. There was not the slightest evidence of any special agreement, and equally none of any special undertaking. The mere importunities of Messrs. Clark L. Owen & Co., the forwarding merchants of plaintiff, without his consent or procurement, and the assumed condescension of defendant, could not, either separately or conjointly, be construed into a special contract, confining defendant's liability to that of a private carrier. Were the importunities of forwarding merchants to be regarded as evidence of special contracts, then it would not unfrequently occur that the fact, whether a wagoner engaged in hauling from our coast towns, was a private or a common carrier, would be made to depend, in a great measure, upon the quantity of hauling to be done, and the number of wagons in the particular trade. A position, it is respectfully submitted, which is quite too preposterous for serious argument.

*J. T. Harcourt*, for appellee. All persons who carry under a special contract are private carriers. (Angell on the Law of Carriers, Section 46 ; 5 Rawle R. 179 ; 7 New Hamp. R. 157.) "Although a person may incur the liability of a com "mon carrier by receiving goods on his own application, to "carry them from one place to another, as an occasional busi- "ness, yet if a person is induced so to undertake by the partic- "ular request of his employer, he incurs only the liability of a "private carrier ; and this even when the person has once been "public carrier, and since abandoned the occupation. (Angell on Carriers, Sec. 72.)

Private carriers are only bound for ordinary diligence, such as every prudent man commonly takes of his own goods. (Angell on Carriers, Sec. 6, 9, 11 and 47.) What is usually done in a country in respect to things of like nature, whether it be more or less in point of diligence, than what is exacted in another country, is in fact the general measure of diligence.

(Story on Bailm. Sec. 11, 12, 13, 14, 15 ; Angell on Carriers, Sec. 7 and 8.

WHEELER, J.   In Chevalier v. Strahan et al. (2 Tex. R. 115,) it was laid down as a general rule, " that all persons " who transport goods from place to place for hire, for such " persons as see fit to employ them, whether usually or occa- " sionally, whether as a principal or incidental and subordinate " occupation, are common carriers, and incur all their respon- " sibilities."   There can be no doubt that the defendant had been accustomed occasionally, to pursue the occupation of a common carrier.   But there was evidence of his having aban- doned or discontinued the occupation ; and there was evidence also of his having again resumed, or expressed the intention to resume it, previous to the employment in this instance.   If there had been any evidence that he was holding himself out as a common carrier at this time ; or if indeed the contrary did not clearly appear, this case could not be distinguished, on principle, from the case of Chevalier v. Strahan.   If one is accustomed to undertake, for hire, to transport the goods of those who choose to employ him, though it be not his constant or usual, but only an occasional occupation, he is a common carrier within the rule there laid down ; at least, whenever he holds himself out in any way to the public as a carrier, or undertakes as a matter of business and profit, the transporta- tion of goods.   (1 Parsons on Con. 639 et seq. and notes ; Angell on Carr. Sec. 72.)   But because one whose principal occupation is farming, does this occasionally, and at certain seasons only, is he therefore necessarily to be deemed to incur the responsibility of a common carrier, at all seasons, and in reference to every contract he may make to carry goods, under whatever special circumstances ?   We think not.   Suppose he were applied to during the planting season, when he did not wish the employment, and did not accept it as a matter of

profit, but consented as a matter of accommodation to a neighbor, and at a sacrifice to himself, though he received the usual compensation ; such a case would not come within the reason or policy of the law ; and the party could not, I apprehend, be held to incur the responsibility of a common carrier. It would be difficult to assign any reason why he should be held to any other responsibility than that of a private carrier, or one who undertakes to carry for hire in a particular instance and under a special contract. Such a case does not seem very plainly distinguishable on principle from the present. The defendant went to Texana on this occasion to carry to market a remnant of his own crop of cotton ; and to bring back in turn a load for himself. To complete his load down he took some cotton also for the plaintiff ; but it is evident he did not expect to bring a load for the plaintiff on his return, or hold himself out for employment ; for he engaged a return load for himself. At the earnest solicitation of the plaintiff's agent he relinquished his own load, though very reluctantly, and as he declared at the time, only as a matter of accommodation to a neighbor. He did not accept the employment as a matter of choice or of profit ; but only as a matter of favor and accommodation. He had not been accustomed to haul from Texana; and one object he had in view was to see the country. It was not usual for goods to be forwarded to LaGrange by that way ; it was the only instance known to the witnesses.

The mere fact that the defendant was solicited to carry the goods is entitled, it is true, to but little weight. If a common carrier in fact, it could make no difference whether he solicited the particular employment, or was solicited to accept it. His responsibility would arise from the fact that he undertook, for hire, the carriage of the goods of those who chose to employ him ; and his being solicited to carry for a particular individual would not lessen his responsibility. But taken in connexion with the other particular circumstances attending this case, we think it entitled to some weight. Under all the cir-

cumstances, we think it was not improper for the Court to leave it to the jury to decide, under the law as given in the charge, whether, upon the facts, the defendant ought to be held to the responsibility of a common carrier, or whether, as to the particular employment, he was not a private carrier, and only responsible as such. The law was correctly given in charge to the jury. We cannot say their finding was contrary to the evidence, and are of opinion that the Court did not err in refusing to set aside the verdict.

But there was error in overruling the plaintiff's objection to the reading of the answer to the thirteenth interrogatory. The interrogatory manifestly sought the opinion of the witness, and the answer gave it, as to a matter of fact, respecting which, it is not pretended the witness had any scientific, professional, or other peculiar knowledge, or was in any respect better qualified than any one else to form a right opinion upon the facts as to which he deposed. His mere opinion as to the cause of the burning was not evidence, and should not have gone to the jury as such. It was for the witness to depose only as to the matters of fact which came to his observation or knowledge, and leave the jury to draw their own conclusions from the facts and circumstances deposed to. There is nothing in the case to take it out of the general rule, that the opinions of witnesses are not to be received as evidence. (1 Greenl. Ev. Sec. 440.) The judgment must be reversed and the cause remanded.

Reversed and remanded.