## The International & Great Northern Railway Company v. Frederike Kuehn et al.

### No. 53.

1. **Negligence — Pleading — Crossing Railway Track.** — It is not always negligence to cross a railway track at a regular crossing in front of a moving train.   All the facts and necessities of the occasion, the knowledge or means of knowledge of the person charged with negligence, are to be considered in deciding the question of negligence.   See testimony held sufficient to support the allegation of negligence on part of the employes in charge of the railway train in a collision.

2. **Depositions—Exceptions.**—Objections to answers in depositions because not responsive to the interrogatories can not be made except by motion filed before announcement for trial.

3. **Res Gestæ—Expressions of Pain.**—Complaints of existing suffering and exclamations of present pain are admissible as res gestæ.   Such complaints, however, are not competent when made after suit for such injuries.

4. **Obstructions to View.**—That there were trees along the track obstructing the view of one approaching a public crossing, and who was injured in a collision at the crossing, is competent, whether alleged or not.

5. **Opinion — Nonexpert.** — A witness not shown to be an expert can not give his opinion in evidence that persons operating the train " could have stopped and not have hit the wagon had they driven slower."

6. **Measure of Damages.** — In an action for damages by the widow and children of a man killed in a railway collision, it is competent to prove how much cotton and corn the deceased could raise in a year, and how much he could earn.

7. **Opinion as to Ordinary Facts.**—It was error to admit testimony that the approach to the railway crossing (where the train collided with a wagon, causing injury) was too narrow to allow a wagon to turn around on it in safety. The facts only could be stated to the jury, and the jury should be left to their own conclusions.

8. **Mortuary Tables.**—It seems that a witness testifying to the probable duration of the life from mortuary tables, should produce them, or they should be offered in evidence.

9. **Measure of Damages for Death of Parent.**—The measure of damages which a minor child is entitled to recover against one negligently causing the death of his father, is " what he could reasonably expect to have received from the father during the probable duration of his life." It was error to admit testimony to the cost of raising a child in the county of the residence of the child. This was not a proper basis for damages.

10. **Customary Speed — Neglect to Ring Bell.** — The customary rate of speed of the trains at the place at which the collision causing the injury occurred, is competent, as was the habit not to ring the bell at such crossing. It appeared that the injured party was well acquainted with the crossing, and the testimony was in conflict whether the bell was rung on the occasion of the collision and injury.

APPEAL from Comal.    Tried below before Hon. T. M. PASCHAL.

*J. D. Guinn* and *Fiset & Miller,* for appellant.—1. The petition, as amended on November 20, 1889, shows that Julius Kuehn saw the train approaching as he began to ascend the dump, and before he was on the track, and that he could have avoided the collision, and that he speculated on the train being able to stop.

2. The rule of evidence as to expressions of bodily or mental feelings admit only exclamations of present pain or statement of present symptoms; and all statements by the sick person relating to past transactions are inadmissible, unless otherwise admissible as part of the res gestæ. 1 Greenl. Ev., secs. 102 (note b), 100 (note a); Railway v. Huntley, 38 Mich., 537; 1 Whart. Ev., sec. 268, and note 2; Armendaiz v. Stillman, 67 Texas, 458.

3. Expressions of pain are only admissible if made under circumstances free from suspicion—that is, upon an occasion when the mind is without a temptation to exceed or fall short of the truth. It must be ante motam litam, which means before the controversy existed upon the fact. Barelle v. Railway, 51 Hun, 640; Railway v. Huntley, 38 Mich., 544; 1 Whart. Ev., sec. 268, and note 2, where it is laid down that " when there has been an opportunity to think over the matter in reference to projected litigation, such expressions are inadmissible."

4. Although questions touching the speed of trains are not properly scientific inquiries, the liability of common observers to be deceived in such matters renders it necessary to exclude their opinions, unless such witnesses first show such extended experience and observation as to qualify them for forming such opinions as would be reliable.   Railway v. Huntley, 38 Mich., 537; Cooper v. The State, 23 Texas, 331; Whart. Ev., sec. 510; Shearm. & Red. on Neg., sec. 478; Railway v. Reason, 61 Texas, 613; Haynie v. Baylor, 18 Texas, 509.

5. Where the inquiry is about a matter that may be understood by one man of sense as well as another, opinions of a witness should be rejected and the facts stated, and the jury allowed to draw their own conclusions. Shelley v. City of Austin, 74 Texas, 608; Cooper v. The State, 23 Texas, 331; Haynie v. Baylor, 18 Texas, 509.   1 Whart. Ev., sec. 513, p. 463, note 1, cites numerous authorities, to effect that a witness can not state opinions which do not themselves involve the facts from which they are drawn in those matters concerning which the jury can themselves form opinions.   McKay v. Overton, 65 Texas, 82.

6. The statement of witness Hamilton as to expectancy of life was hearsay evidence of the contents of mortuary tables, and the tables themselves were best evidence of their contents, if same were in any event admissible. 1 Greenl. Ev., 82.   If the opinion of a witness is sought, such opinion, to be admissible, must be based either on facts in the case at bar or in a similar hypothetical case.   Railway v. De Milley, 60 Texas, 194; 1 Whart. Ev., sec. 452, note 7.

7. The minor plaintiffs could only recover the prospective pecuniary loss to them resulting from the death of their father.   That loss is what the deceased would have probably earned in his business or calling during the residue of his lifetime, which would have gone for the benefit of his children, taking into consideration his age, ability, and disposition to labor, and his habits of living and expenditures.   March v. Walker, 48 Texas, 372; Cotton Press Co. v. Bradley, 52 Texas, 587; Railway v. Cowser, 57 Texas, 293; 2 Sedg. on Dam., 537, note 3.

8. The damages recoverable in the case is the pecuniary loss to plaintiffs resulting to them from the death of deceased.   That loss is what deceased would have probably earned in his business or occupation during the residue of his lifetime, which would have gone for the benefit of plaintiffs; that is, what plaintiffs would have received out of deceased's said prospective earnings.   Railway v. Cowser, 57 Texas, 293; Cotton Press Co. v. Bradley, 52 Texas, 588; 2 Sedg. on Dam., 537, note 3; 2 Thomp. on Neg., 1290, note 2; Railway v. Butler, 57 Pa. St., 335; Railway v. Armstrong, 52 Pa. St., 282.

9. Duty of one approaching railroad crossing: Railway v. Kutac, 72 Texas, 643; Railway v. Bracken, 59 Texas, 71; Hoover v Railway, 61 Texas, 503; Railway v. Graves, 59 Texas, 330; Schofield v. Railway, 114

U. S., 616, and 95 U. S., 161; Railway v. Franz, 18 Atl. Rep., 22; Dunning v. Bond, 38 Fed. Rep., 813; State v. Railway, 76 Me., 357; 21 Am. and Eng. Ry. Cases, 659.

No brief for appellees reached the Reporter.

COLLARD, Associate Justice.—This is the second appeal of this case; the former is reported in 70 Texas, 582, to which we refer for statement of the case as there presented. The case went to trial again upon the same amended petition upon which it was submitted before, and an amendment styled a trial amendment. On the last trial there was verdict and judgment thereon for plaintiffs Mrs. Kuehn, now Mrs. Nolte, for $1500, and the two minor children, Willie Kuehn and Herman Kuehn, for $2000 each, or $5500 in all. Defendant has appealed.

The first assigned error is, that the court erred in overruling defendant's general demurrer to the petition, as amended by the trial amendment filed November 20, 1889, because it shows no cause of action.

The fifth assignment of error is to the effect, that the court erred in overruling defendant's special demurrers to plaintiffs' pleadings, because they do not show proper precaution to prevent injury to deceased. Both of these assignments will be considered together.

On the former appeal it was held, that the petition upon which the trial was had (the same now before us, the second amended petition, filed December 8, 1885), was good. Before the last trial, on November 20, 1889, plaintiffs filed what is styled a substitute for trial amendment, in which it is alleged that defendant and its servants saw deceased Kuehn attempting to cross the railway in ample time to have checked and stopped the train, prevented the accident, and saved the life of deceased, but that defendant moved on at a rapid rate, regardless of his safety, and failed and neglected to stop the train, although it could have done so. That Kuehn did not see the train until he was ascending the steep to cross the road, and at a time when he could not with safety turn to the right or left, and could not stop with safety. It was also alleged, that the place where the road crossed was level before the railway was built, "and that the company failed and neglected to leave the crossing in as good order as it was, or as it might have been."

These allegations were made in addition to those of the amended petition.

In that petition it was shown that plaintiff was compelled to drive his wagon over the railway at the crossing in order to reach his home; "that the crossing was within the corporate limits of the city of New Braunfels, and the ordinances of the city required trains at that point not to exceed in speed the rate of six miles an hour, and that defendant had placed a sign board to that effect at the corporate limits," and the following: "On

the said 27th day of February, 1883, at the point of intersection of the Seguin and New Braunfels road and defendant's railway there was a wagon-crossing, which was constructed in an unskillful and negligent manner, and the top of the roadbed at said point of intersection was greatly above the level of the wagon road, and the dirt approaches to the wagon-crossing were unusually and excessively steep and very difficult of ascent, and an unusual and unnecessary period of time was required for heavy vehicles to cross said track; and defendant had carelessly and negligently erected ditches, cattle guards, and fences on the side of the said crossing, so as to render the same very narrow, and dangerous for vehicles to back or turn to avoid a train of cars."

Other allegations are made, showing the collision, the injury, and such facts as would complete the statement of the case.

Taking all the allegations upon the subject in the amended petition and the trial amendment, it can not be said that they show a case of contributory negligence on the part of deceased that would certainly prevent a recovery by plaintiffs, or that deceased failed to exercise such care as the occasion demanded. The amended petition on which the first trial was had was on former appeal held to be good. The additional fact set up in the trial amendment, that deceased saw the train while ascending the way to the crossing, when he could not turn to the right or left or stop with safety, does not conclusively show that the collision was caused by his negligence. His position and all his surroundings calling for care on his part must be considered. The steep and narrow approach, the danger of his wagon running backward if he stopped, the impossibility of turning with safety, the speed of the approaching train as he may have presumed it to be according to the averment made, are all facts to be considered in connection with the time he is alleged to have seen the train. The distance of the train from him at the time he saw it is not stated. It may be the jury, upon the facts, will conclude that he was guilty of contributory negligence in driving on after he discovered the train, but we are not prepared to say they could not do otherwise under the facts as stated. It is not always negligence to cross a railway track at a regular crossing in front of a moving train. All the facts and necessities of the occasion, the responsibility therefor, the knowledge or means of knowledge of the person charged with negligence, are to be considered in deciding the question. The petition presented a question for the jury if the facts stated are true, and not one that should be decided by the court on demurrer.

Before the trial plaintiffs filed a motion to exclude parts of the answer of defendant's witness Jones, on the ground that the question suggested the answer, and assumed that the bridge was crossed, the bell rung, and the whistle blown. The answer of the witness was, that the train made a good deal of noise [crossing the bridge] and ringing the bell [and in

the usual travel along the road]. The court struck out the portions of the answer in the above brackets. Defendant excepted, and assigns error, that the question did not suggest the answer or assume the facts as stated.

There was an issue as to whether the bell was rung or the whistle blown; no dispute about crossing the bridge. The court allowed the only part of the answer that was subject to the objection, and which should have been stricken out, to stand and to be read to the jury.

Appellant insists that there was error in admitting, over defendant's objections, that part of witness Bartlett's answer to the seventh direct interrogatory, because the witness answered matter that was not responsive to the question asked. The witness was testifying by deposition. The objection was made on the trial, and not by motion before announcement. The objection, as stated in the assignment, was to the form and manner of taking the deposition, and could not be made except by motion filed before announcement for trial.

There was an issue as to whether Kuehn died of the injuries received in the collision with the train or of Bright's disease. Mrs Nolte, formerly Mrs. Kuehn, was allowed to testify, over objection of defendant, that Kuehn complained of his wound from the time of the collision up to the time of his death. Error is assigned to the ruling, because his complaints are hearsay, and that he was making evidence for himself.

The rule is, that complaints of existing suffering and exclamations of present pain are admissible as res gestæ. If the complaints were made after Kuehn had brought this suit for damages, or after the litigation was in view, they would not be admissible. 1 Whart. Ev., sec. 268, and authorities cited; 1 Greenl. Ev., secs. 102, 100.

There was no error in admitting testimony that there were trees near defendant's right of way, or other obstructions preventing or interfering with the view of the train from the road where Kuehn was, whether the facts were alleged or not.

There was error in refusing to exclude the answer of the witness Beustedt, that "they [the persons operating the train] could have stopped and not have hit the wagon had they driven slower." The witness was not an expert; his answer was an invasion of the province of the jury.

It was not error to allow proof of how much cotton and corn Kuehn could raise in a year, and how much he could earn in dollars and cents. It was not error to allow a witness to state how long it would take a team to cross the railway dump on the crossing from the beginning of the approach. 1 Greenl. Ev., 61.

It was error to admit testimony that the approach was too narrow to allow a wagon to turn around on it with safety. The facts only could be stated to the jury. It was in proof that the ascent was steep, that the way was narrow; its dimensions were given; and it was shown that there was

a precipice on each side, or at least steep sides, and that to back down the steep there was danger of running over the sides.

The question comes within the rule of the case of Shelley v. City of Austin, 74 Texas, 608. The jury should have been left to form their own conclusion from the facts. Cooper v. The State, 23 Texas, 336; Haynie v. Baylor, 18 Texas, 509.

It is insisted that it was error to allow proof that defendant had a signboard about seventy-five yards northeast of the crossing, with a direction upon it, "Trains will not here exceed six miles an hour."

The petition alleged that there was such a signboard at the corporate limits; the proof showed that it was within the corporate limits, over a mile. It was not necessary to plead the fact at all; but having been pleaded, it is contended that it must be proved as alleged, and that there is a fatal variance in the averments and the proof. The gist of the allegation was, that by the regulations of the company trains were not allowed to run faster than six miles an hour at the place where Kuehn was hurt. The proof was responsive to this issue. It would be a very technical application of the rule to hold that there was an essential variance, and we do not think it should be so held. This difficulty can be easily obviated before another trial 1 Greenl. Ev., secs. 56, 64.

In regard to the evidence of Hamilton, a life insurance agent, who testified that he was familiar with the Carlyle mortuary tables, and had worked under it, we may say, that while it is our opinion that an expert may give such testimony, it would have been more satisfactory if the tables themselves had been offered.

This same witness was permitted by the court, over objection of defendant, to state the cost of raising a child in Guadalupe County, and that it would cost $10 per month. Defendant reserved exceptions to the ruling upon several grounds, among which was that the testimony did not give a proper basis for damage; and error is now assigned upon the same ground. The two minor children of deceased recovered each $2000 by the verdict and judgment. The testimony was clearly inadmissible. The measure of damages for these children was not what it would cost to board or educate them, but the pecuniary benefit they could reasonably expect to receive from their father during the probable duration of his life. To ascertain what they might reasonably expect to receive from him, proof of his age, circumstances, health, habits of industry, sobriety, economy, occupation, skill and capacity, and such like facts, would be admissible. He was under obligations to raise his children, and to see that they were supplied with necessaries during their minority, but the cost of doing so would not be the measure of their legal loss by his death in a suit therefor. It might be much less or much more. Railway v. Cowser, 57 Texas, 300; City of Galveston v. Barbour, 62 Texas, 174;

March v. Walker, 48 Texas, 375; Cotton Press Co. v. Bradley, 52 Texas, 601; Winnt v. Railway, 74 Texas, 32; Railway v. Douglass, 69 Texas, 694; Railway v. Lester, 75 Texas, 60; 75 Texas, 224; 78 Texas, 541.

We are not inclined to say that there was no evidence of gross negligence of defendant and its servants, and that the court should have so instructed the jury, as requested by the defendant.

In discussing the question of the degree of care to be used by a deaf person who was struck while walking on a railway track, Chief Justice Stayton says: "The fact that such was his condition made it the more necessary that he should not place himself in a place of danger." Artusy v. Railway, 73 Texas, 191.

This is correct reasoning, but we do not think it would be proper to single out the fact and so instruct the jury, especially where the court, as in this case, has fully and carefully instructed the jury as to contributory negligence.

On the former appeal of this case, Justice Walker, in speaking of the court's charge, said: "Having given a clear exposition of the law applicable to the facts, it was the court's duty to refuse charges asked upon the subject covered by the general charge upon the effect of isolated facts as negligence or not." 70 Texas, 581. The jury should be left to decide for themselves the meaning and force of the facts, unless made negligence per se by statute.

So we conclude there was no error in refusing the requested charge of defendant, that extra care was required of deceased in case his sight and hearing were defective.

Defendant also asked the court to instruct the jury, that " when Kuehn was about to drive his wagon and team across the railway track, it was his duty to look and listen for an approaching train before attempting to cross the track, and not to drive carelessly into a place of possible danger; and if he failed to do so, and such failure contributed proximately to the injury, then plaintiffs can not recover." This instruction again singles out a particular fact and argues it for the jury, and for that reason is objectionable.

The court, in the general charge, told the jury, that "it was the duty of deceased to look out for the approach of the train, and to observe all reasonable precaution before attempting to cross the track." And again, "A person about to cross the track of a railway upon a public highway is bound to exercise all reasonable care and caution to avoid injury in crossing." Again, the court charged: "You are instructed as a matter of law, that it is not the exercise of ordinary care and prudence for a person to drive with a team directly onto a railway crossing without making an effort to ascertain whether a train is approaching, or whether it is safe to drive on the track with his team."

This last charge was too much in favor of defendant; it told the jury,

in effect, that certain acts would amount to negligence on the part of deceased.

There were other more general instructions upon the same subject. There was no error in refusing the special charge requested.

In the general charge the court instructed the jury, that the deceased and the railway company had an equal right to cross the road at the point where the accident happened, and that the law imposes on both parties the duty of using reasonable and prudent precautions to avoid accident and danger; and while it was incumbent on the railway company in running its train on the occasion referred to, to give the required signals by ringing the bell and sounding the whistle at least eighty rods before reaching the crossing, it was the duty of deceased to look out for the approach of the train, and to observe all reasonable precaution before attempting to cross the track.

This charge is objected to by appellant, because it declares that " both Kuehn and the defendant had equal rights to the crossing." This charge does not so declare; but it might have been so understood. The company has precedence in the use of its road and crossing, but that precedence is regulated by law. The respective rights of the company and the public are well understood, and are explained in so far as they are applicable to this case in other portions of the court's charge. The company's rights are recognized, and the jury by the charge are required to observe them. So qualified, and qualified by the company's precedent right to the use, there was no error in the charge. The supposed vice in the charge is, that it may have been construed to mean that deceased and defendant each had an equal right to cross at the same time.

In another special requested charge, the court is asked to tell the jury, that if Kuehn knew the crossing was bad, he should have been much more careful before attempting to cross. It was not necessary to so instruct the jury. A general charge upon the care to be used by deceased was sufficient and correct.

It was not error to instruct the jury to the effect, that if the signboard mentioned was near the crossing, Kuehn could presume that trains would not run faster than six miles an hour. But it would have been error to charge, as requested by defendant, that all testimony as to the signboard should be discarded from the consideration of the jury.

We do not think it incumbent upon us to decide as to the effect of the testimony offered to establish contributory negligence of Kuehn.

The witness Busch lived nearly one mile east of the crossing, near the railway track. He testified, that he had often timed the speed of the trains in coming from the bridge to his house, and it took one minute and forty seconds. The crossing where Kuehn was hurt was between the bridge and witness' house.

The evidence was admissible to show the customary rate of speed of

trains along by the crossing, travelling in the same direction of the train in question. It was shown that Kuehn lived near the crossing and often passed over it. The customary rate of speed of the train at this place was pertinent, as it gave him the right to regulate his conduct by it. For the same reason, it was not error to allow proof that it was the habit of persons operating the trains not to ring the bell in passing this crossing.

The evidence was admissible for the additional reason that it tended to prove that the bell was not rung on the occasion of the accident. There was a conflict in the testimony as to whether the bell was rung at the time or not; the testimony offered strengthened the probability that it was not rung. The fact was not a distinct collateral fact.

In the case of Grand Trunk Railway v. Richardson, 91 United States, 454, the question was whether the company's locomotive caused a fire. Testimony was admitted, over objections, " that at various times during the summer before the fire occurred, defendant's locomotives scattered fire when going past the mill and bridge, without showing that either of those which the plaintiffs claimed communicated the fire were among the number, and without showing that the locomotives were similar in their make, state of repair, or management to those claimed to have caused the fire complained of.'' Justice Shaw, delivering the opinion, said: " The question has often been considered by the courts in this country and in England, and such has, we think, been generally held admissible, as tending to prove the possibility and the consequent probability that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railway company.'' 1 Whart. Ev., secs. 41, 42, 43, 40.

If special acts are admissible to show a habit of negligence, as decided in the foregoing case, the habit itself would undoubtedly be. There was no error in admitting the testimony.

Other errors assigned need not be noticed, as the questions will not probably arise on another trial.

Because of the errors committed on the trial, as before noted, the judgment of the lower court should be reversed and the cause remanded; and it is so ordered.

*Reversed and remanded.*

Delivered January 11, 1893.