## AUSTIN FIREPROOF WAREHOUSE TRANSFER CO. v. FALTINSON.

### No. 3991.

Court of Civil Appeals of Texas. El Paso.

Oct. 24, 1940.

Boone. Henderson, Boone & Davis, of Corpus Christi, and Scott & Wilson, of Waco (Frank M. Wilson, of Waco, of counsel), for appellant.

Neel, King & Rachal, of Corpus Christi, for appellee.

PRICE, Chief Justice.

This case has been consolidated with case No. 4020 on the docket of this court, one being on the plea of privilege, the other on the merits.

Appellees, R. L. Faltinson and his wife, as plaintiffs, filed in the District Court of Nueces County suit against appellant Austin Fireproof Warehouse Company, as defendant. Hereafter the parties will be referred to in accordance with their designations in the trial court.

The plaintiffs, in substance, alleged that defendant was a common carrier and they delivered to it, in that capacity, certain enumerated household articles, of the alleged total value of $6,888.44, for transportation from Austin to Corpus Christi; that defendant failed to safely transport same in accordance with its duty, and as a result the plaintiffs were damaged to the extent of the value thereof.

In due time defendant filed a plea of privilege in statutory form seeking to have the venue of the cause changed to Travis County, the county of its residence.

Plaintiffs in due time filed a controverting affidavit to said plea. The allegations of this affidavit were in due form, and invoked Subdivision 24 of Article 1995, R.S., as conferring the right on plaintiffs to sue defendant in Nueces County.

A hearing was had on the issue raised by the plea and controverting affidavit. Defendant's plea was overruled, and appeal was perfected from such ruling. While this appeal was pending, the case was tried on its merits. On the verdict a judgment was rendered in favor of plaintiffs against defendant, and from this judgment defendant likewise duly perfected its appeal.

By order of this court the two appeals were consolidated.

A review of the judgment on the plea of privilege is called for before passing on the case on its merits.

In the event the venue should have been changed, and it is here so ordered, a review of the judgment on the merits is precluded.

A trial of the issue of venue involves a determination of the facts essential to lay such venue in the county where such suit is filed. Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91.

The facts essential for plaintiffs to maintain this suit in Nueces County are prescribed by subsection 24 of Article 1995, R.S. Essential, under the cited subdivision, was the establishment by a preponderance of the evidence that this was, first, a suit for loss or damage to freight; second, defendant was a common carrier operating or doing business in the State as such; third, that the defendant was doing business in or had an agent or representative in Nueces County.

Plaintiffs clearly discharged the burden as to the nature of the suit; they likewise established, beyond any question, that defendant received and agreed to carry the goods involved from Austin to Corpus Christi. Likewise it is clear that defendant was engaged in the operation of its business in the State. The evidence fails to show that the defendant, at the relevant times, had an agent or representative in Nueces County.

Defendant contends that the proof fails to show that it was a common carrier within the meaning of the subdivision involved; that it likewise failed to show that it was doing business in Nueces County.

If a preponderance of the evidence fails to show defendant was a common carrier and doing business in Nueces County, the judgment is wrong and must be reversed.

Defendant was operating under what is denominated as a "Special Commodity Carrier Permit" issued to defendant on its application by the Railroad Commission of the State. This permit was to transport household goods and used office furniture and equipment from Austin to all points in Texas, and from all points in Texas to Austin. In the permit it was recited that defendant here had declared an intention not to operate as a "common carrier" or "contract motor carrier."

This permit finds its legal authorization in Chapter 314, Acts Regular Session of the Forty-First Legislature, 1929, as amended by Regular Called Session of the Forty-Second Legislature. See Article 911b, Vernon's Annotated Civil Statutes. Subdivisions (f), (g) and (h) of section 1 are as follows:

"(f) The term 'permit' means the permit issued to contract carriers under the terms of this Act.

"(g) The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock

association, and their lessees, receivers or trustees appointed by any Court whatsoever owning, controlling, managing, operating or causing to be operated any motor propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided, that the term 'motor carrier,' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns.

"(h) The term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation or hire over any highway in this State other than as common carrier."

It will be observed that the term "common carrier" is not expressly defined. A "contract carrier" within the meaning of the act is any carrier other than a "common carrier."

■ In order to determine what, under the act, constitutes a contract carrier, it is necessary to define a common carrier of freight by motor. Now the means used have no bearing on the qualities essential to constitute a common carrier of freight.

Involved in the case of Chevallier v. Straham, 2 Tex. 115, 47 Am.Dec. 639, was the question of whether defendant was a common carrier, or otherwise. In the course of the opinion Chief Justice Hemphill said: "It may be laid down as a rule, that all persons who transport goods from place to place, for hire, for such persons as see fit to employ them, whether usually or occasionally, whether as principal or an incidental and subordinate occupation, are common carriers and incur all their responsibilities."

One of the elements of the test laid down is pursuing the business as an occupation. It is difficult to perceive how one could well pursue an occupation involving the patronage of others without in some way holding himself out as being willing to transport.

In the case of Haynie v. Baylor, 18 Tex. 498, Chevallier v. Straham, supra, is discussed, and the question as to the "holding * * * out as a common carrier" is given weight in the determination as to the status of a carrier for hire.

In the case of Burnett v. Riter, Tex.Civ. App., 276 S.W. 347, are to be found a number of definitions of a common carrier. In all of which appears the element of holding out as carrying for the public.

In Vol. 13 C.J.S., Carriers, page 25, § 2, this very terse definition is given: "A common carrier is one who as a regular business transports personal property from place to place for persons who may employ him and pay his charges."

Coupled with this definition is this statement: "What constitutes a common carrier is a question of law; but whether one charged as such is within the definition is a question of fact." This last statement finds support in Haynie v. Baylor, supra.

Under Article 911b there are two classes of carriers—common carriers and contract carriers. These two classifications have long subsisted in the law of carriers.

■■ The permit issued recites that defendant had declared its intention not to operate as a common carrier or a contract carrier. The permit purports to authorize defendant to operate as a special commodity carrier. Purported basis for this classification is to be found in subsection (d) of Section 6, of Article 911b. By this subdivision the Railroad Commission is empowered to issue special permits for the transportation of enumerated commodities. In the subdivision in question no provision is made for the classification of the motor carrier, either as contract or common. We take it to be fundamental that a carrier may be a common carrier and confine his services to one commodity. In our opinion, so far as its relationships to its patrons are involved, a motor carrier confining its services to the transportation of one commodity may be either a common carrier or a contract carrier. It is our understanding that the Attorney General of the State ruled in an official opinion that under a permit issued under said subdivision a carrier might be either common or contract. Stephenson v. Binford, 287 U.S. 251, 53 S.Ct. 181, 77 L. Ed. 288, loc. cit. 302, 87 A.L.R. 721.

■ It is true, the evidence is rather scant as to the holding out of defendant of itself as a common carrier and of its general activities under the permit in question. Still, we believe it is sufficient to sustain a finding that defendant was a common carrier. It solicited this business, and had a solicitor or solicitors to obtain business

of this character. Its very name is an indication that part of its activities was the transportation for others.

While the burden rested upon plaintiff to establish that defendant was a common carrier, there is no proof controverting the facts in evidence tending to establish it held itself out as carrying for the public indifferently.

Was defendant doing business in Nueces County within the meaning of subdivision 24 of Article 1995? The evidence is undisputed on the point. The contract was for transportation by motor from Austin to Corpus Christi. This contract was never complied with—the goods were destroyed by fire in Bell County.

Defendant had, perhaps, one time before transported goods of this character from Austin to Corpus Christi. Subsequent to the destruction of plaintiffs' goods one of the defendant's trucks was seen on the streets of Corpus Christi.

What is required to constitute "doing business" by a corporation in a particular locality has often been before the courts, and has been often decided. It has arisen in matters of taxation, as to obtaining service on a corporation, and in relation to foreign corporations' rights to maintain a suit in the courts of the State. It is but fair to say that these definitions are in the light of the particular subject matter before the court at the time.

This definition appears in Restatement, Conflict of Laws, Sec. 167a: "'Doing business' is doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose, with the intention of thereby initiating a series of such acts." This definition occurs in the treatment as to foreign corporations doing business in a State. The place involved, then, is the whole State. In the Texas Annotations numerous Texas cases are cited as being in accord with that definition. Substantial support is found for the definition in the Texas cases cited. In Words and Phrases, Permanent Edition, many pages are devoted to setting forth and explaining the definitions of this phrase. See Words and Phrases Permanent Edition, Vol. 13, pp. 127 to 235. Noted there is the case of S. R. Smythe Co. v. Ft. Worth Glass & Sand Co., 105 Tex. 8, 142 S.W. 1157, 1159. The question involved was the right of a foreign corporation to maintain a suit in this State. In the course of the opinion Judge Dibrell makes the following statement: "To do business in this state imports a carrying on of business of the corporation for the purposes of its organization, while the transaction of business in this state rather imports the idea of isolated transactions in the line, of course, of the purposes of its creation."

In our opinion, the sporadic delivery of goods by a corporate motor carrier in a county does not constitute "doing of business" in such county. It may constitute the transaction of business therein, but this is not sufficient under the venue statute. A lawyer in active practice may transact business in many parts of the State, but is, however, ordinarily carrying on business in only one county. A mercantile corporation having its principal place of business in one county, making sporadic delivery of goods sold to other counties, could hardly be considered as carrying on business in the counties where such deliveries take place. We do not mean to hold that a continual and habitual delivery of goods in a county might not constitute doing business therein within the meaning of the venue statute.

Such is not the case in the instant case. The delivery in question in this suit was only contemplated, and not consummated. Before that time there was evidence that perhaps they had hauled goods from Austin to Corpus Christi for one other party. Subsequent to the filing of the plea of privilege herein, a truck of defendant had been seen on the streets of Corpus Christi. This is all the evidence on the subject, and, giving it full credence, with all legitimate deductions, we do not believe it sufficient to establish the doing of business in Nueces County.

By way of sustaining its proposition that the evidence failed to show the defendant was doing business in Nueces County, in its brief, defendant has furnished us three citations: Subdivision 24, Article 1995, Revised Statutes; Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91; 43 Tex.Jur., Sec. 112.

In their counter proposition plaintiffs are satisfied with merely citing Subdivision 24 of Article 1995.

The authorities cited by defendant have no bearing on the construction of the subdivision in question. The citation of the statute is, of course, most helpful. However, the parties to the appeal each seem

to concede the question as to the status of defendant as a common carrier, or otherwise, is the principal question involved. This is true, because the proper determination of that question has important bearing both as to the proper disposition of the plea of privilege and the case on its merits. But the establishment of the doing of business in Nueces County is a venue fact, is a condition to the retaining of the venue in Nueces County.

It follows from what has been heretofore stated that defendant's plea of privilege should have been sustained.

It is ordered that the judgment of the trial court be reversed and that the venue be changed to Travis County.

It follows from this judgment that the judgment of the trial court in favor of the plaintiffs on the merits of the case must likewise be reversed. It is so ordered.